IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HORIZON AG-PRODUCTS,

       Plaintiff,

vs.                                                                                      No. CIV 09-1109 JB/DJS

PRECISION SYSTEMS ENGINEERING,
INC., and CONVEYORS AND
EQUIPMENT, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Precision Systems Engineering's
Motion to Dismiss Count III of First Amended Complaint, filed February 15, 2010 (Doc.
31)("Motion to Dismiss").[1]  The Court held a hearing on May 11, 2010.  The primary issues are:
(i) whether Horizon AG-Products ("Horizon AG") sufficiently sets forth a claim for tortious
interference with existing contractual relations when it alleges only that Defendant Precision
Systems Engineering, Inc. ("PSE") "was aware . . . that Horizon [AG] was engaged in a substantial
number of business relationships," Second Amended Complaint ¶ 67, at 12, and that, had the

---

[1] Horizon AG-Products has filed a Second Amended Complaint with the Court.  See Second
Amended Complaint for Breach of Contract, Tortious Interference with Business Relationships,
Professional Malpractice, Violation of Unfair Trade Practices Act, Unjust Enrichment, Failure to
Obtain Proper Licensure, and Prima Facie Tort, filed May 3, 2010 (Doc. 45-1)("Second Amended
Complaint").  At the hearing on May 11, 2010, Ross L. Crown, counsel for the Defendant Precision
Systems Engineering, Inc., told the Court that Count III of the Second Amended Complaint is
identical to Count III of the First Amended Complaint.  See Transcript of Hearing at 2:12-20 (taken
May 11, 2010)(Court, Crown)("Tr.")(The Court's citations to the transcript of the hearing refers to
the court reporter's original, unedited version; any final transcript may contain slightly different
page and/or line numbers.).  The Court has carefully examined Count III in both the First Amended
Complaint and Second Amended Complaint, and has concluded that the allegations are identical.
The Court will thus cite to and address the current pleading -- the Second Amended Complaint.

software that PSE allegedly manipulated shut down Horizon AG's plant, "[t]he shut down would have prevented [Horizon AG] from meeting all current . . . orders from its customers," id. ¶ 69, at 12; and (ii) whether Horizon AG sufficiently sets forth a claim for tortious interference with prospective contractual relations when Horizon AG alleges only that "PSE was aware . . . that Horizon [AG] would be engaged in additional business relationships," id. ¶ 68, at 12, and that, had the software that PSE allegedly manipulated shut down Horizon's plant, "[t]he shut down would have prevented [Horizon AG] from meeting all . . . future orders from its customers," id. ¶ 68, at 12. Because Horizon AG has failed to allege sufficient facts to state a claim for tortious interference with existing or prospective contractual relations, the Court will dismiss Count III without prejudice to Horizon AG's moving to amend to correct the deficiencies in the Second Amended Complaint.

## FACTUAL BACKGROUND

For purposes of this motion, the Court takes as true the allegations in Horizon AG's Second Amended Complaint.[2]  See Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(stating that a rule 12(b)(6) motion tests the sufficiency of the allegations in the complaint after taking the allegations as true).  Horizon AG owns and operates a plant in Cuba, New Mexico that creates dry ingredients for feed stock and fertilizer.  See Second Amended Complaint ¶ 10, at 2.  Horizon AG decided to renovate its plant.  See id. ¶ 10, at 2.  PSE submitted a proposal for the engineering and

---

[2] Horizon AG's response to PSE's Motion to Dismiss asserts that PSE has admitted certain facts in its motion.  See Plaintiff's Horizon AG-Products' Response to Motion to Dismiss Count III of First Amended Complaint at 5, filed March 1, 2010 (Doc. 34)("Response").  This characterization of PSE's arguments is not correct.  For purposes of addressing the Motion to Dismiss, Horizon AG's facts are taken as true.  See Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009)(stating that, when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint).  PSE treats Horizon AG's facts as true because it must for the purposes of its Motion to Dismiss.  PSE's use of those facts to bring its Motion to Dismiss is thus not an admission.  For the purposes of a motion to dismiss, the allegations in a complaint are taken as true, nothing more, with exceptions not relevant here.

design services for the plant renovation and expansion, which Horizon AG accepted.  See id. ¶¶ 10-13, at 2-3.  Horizon AG alleges that, shortly after PSE initiated the work, problems surfaced, and Horizon AG began to question the status of the project and the amounts PSE was asking Horizon AG to pay.  See id. ¶¶ 19, 21, at 4, 5.  Horizon AG contends that these problems resulted in operational problems at the facility, which severely affected the facility's production operations, and Horizon AG's ability to meet current and future orders from its customers.  See id. ¶ 23, at 6.  Horizon AG has paid approximately $600,000.00 to PSE and disputes the remaining invoice.  See id. ¶¶ 20-21, at 5.  Horizon AG alleges that PSE disclosed that it had inserted a "time bomb" code into the software at Horizon AG's plant that would cause the software to be automatically removed on a certain date to encourage Horizon AG to pay an outstanding invoice.  Id. ¶¶ 27-28, at 6.  Horizon AG contends that, "[h]ad PSE [sic] time bombs been allowed to initiate, Horizon [AG]'s entire plant would have ceased functioning."  Id. ¶ 35, at 8.  Horizon AG prevented the time bombs from shutting down its plant.  See id. ¶¶ 35, 41, at 8, 9.

In Count III, Horizon AG alleges a claim for tortious interference with business relationships.  Horizon AG alleges that PSE knew it "was engaged in a substantial number of business relationships" and that, if the software "would have" shut down Horizon AG's plant, Horizon AG would not have been able to meet all of its customer's orders.  See id. ¶¶ 67, 69, at 12.  Horizon AG also alleges that PSE knew  it "would be engaged in additional business relationships" and that, if the software "would have" shut down the plant, Horizon AG would not have been able to meet all future orders from its customers.  Id. ¶¶ 68-69, at 12.  Horizon AG contends that PSE engaged in intentional and unjustified interference with Horizon AG's business relationships, and that PSE's tortious interference damaged Horizon AG.  See id. ¶¶ 70-72, at 12.

## PROCEDURAL BACKGROUND

On November 19, 2009, Horizon AG filed an Application for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief, and Complaint for Breach of Contract, Tortious Interference with Business Relationships, Civil Extortion, Violation of Unfair Trade Practices Act, Unjust Enrichment, Failure to Obtain a Proper License, and Prima Facie Tort in the Thirteenth Judicial District Court in Sandoval County, New Mexico. PSE filed a Notice of Removal, asserting that the United States District Court for the District of New Mexico had jurisdiction under 28 U.S.C. § 1332. See Notice of Removal at 1, filed November 23, 2009 (Doc. 1). Horizon AG filed a motion, asking the Court for leave to file an amended complaint. See Motion for Leave to File First Amended Complaint, filed January 19, 2010 (Doc. 26). The Court granted this motion and deemed the First Amended Complaint filed. See Order Granting Motion for Leave to File First Amended Complaint, filed February 1, 2010 (Doc. 29).

On February 15, 2010, PSE filed a Motion to Dismiss Count III of First Amended Complaint. See Motion to Dismiss. PSE contends that the Court should, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, dismiss Count III of Horizon AG's First Amended Complaint, because Horizon AG has not stated, and cannot state, a valid claim against PSE for tortious interference with either existing or prospective business relationships. See id. at 2. PSE contends that Horizon AG does not sufficiently allege any existing or prospective contractual relationships. See id. at 2-3. PSE also contends that Horizon AG does not allege that PSE's alleged conduct interfered with any of Horizon AG's contractual relationships. See id. at 3-4.

On March 1, 2010, Horizon AG filed its Response to PSE's Motion to Dismiss. See Plaintiff's Horizon AG-Products' Response to Motion to Dismiss Count III of First Amended Complaint, filed March 1, 2010 (Doc. 34)("Response"). Horizon AG contends that PSE's Motion

-4-

to Dismiss effectively seeks summary judgment on Count III.  See id. at 1.  Horizon AG states that PSE seeks to address the merits of the claims and cites cases where courts dismissed tortious interference claims on summary judgment instead of on the pleadings.  See id. at 1-2.  Horizon AG argues that the Court should not consider these cases authoritative support justifying dismissal of Count III.  See Response at 2.

In its Response, Horizon AG also argues that its allegations are sufficient to state a plausible claim to relief for tortious interference with contractual relations.  See id. at 4.  Horizon AG contends that a jury could conclude that PSE's actions were unjustified and accomplished through improper means, because PSE allegedly inserted the codes to "encourage" Horizon AG to pay the disputed amount.  Id. at 5.  Horizon contends it "pled that PSE's tortious conduct harmed Horizon [AG] because (1) some orders went unfilled because Horizon [AG] had to dedicate plant time and effort to identifying, defeating and ultimately removing the time bombs; and (2) Horizon [AG] expended resources to mitigate or ameliorate PSE [sic] tortious conduct."[3]  Id. at 5.

Horizon AG also contends that the Restatement (Second) of Torts § 766A is implicated in this case.  See Response at 4.  Section 766A states: "One who intentionally and improperly interferes with the performance of a contract . . . by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for

---

[3] Although Horizon AG contends it pled that some orders went unfilled because it had to dedicate plant time and effort to removing the time-bomb codes, this allegation is not set forth in the Second Amended Complaint.  Instead, Horizon AG alleges that project delays and cost overages "resulted in numerous operational problems at the facility which severely affected the facility's production operations and Horizon AG's ability to meet current and future orders from its customers."  Second Amended Complaint ¶ 23, at 6.  Horizon AG does not allege, however, that it was unable to meet current and future orders from its customers because of PSE's allegedly tortious conduct.  The Second Amended Complaint states only PSE's allegedly tortious conduct "would have" prevented Horizon AG from meeting all current and future orders from its customers if the software had shut down the plant.  Id. ¶ 69, at 12.

the pecuniary loss resulting to him." <u>Restatement (Second) of Torts</u> § 766A (1979).  Horizon AG

presumably argues that Section 766A is implicated because its language appears to be broader than

the language that New Mexico courts have used in discussing tortious interference with existing

contractual relations.[4]  <u>See</u> Transcript of Hearing at 10:11-125 (taken May 11, 2010)(Court,

Farlow)("Tr.").[5]

On March 15, 2010, PSE filed a Reply in Support of its Motion to Dismiss.  <u>See</u> Reply in

Support of Motion to Dismiss Count III of First Amended Complaint, filed March 15, 2010 (Doc.

37)("Reply").  PSE reiterated its contentions that Horizon AG has not alleged that PSE's tortious

conduct breached its contractual relationships.  <u>See id.</u> at 1-2.  PSE contended that Horizon AG has

not alleged that tortious interference with existing or prospective contractual relationships occurred.

<u>See id.</u> at 5.

At the hearing on May 11, 2010, Mr. Crown, PSE's counsel, argued that Horizon AG has

not stated a claim for tortious interference of contractual relationships because it does not allege that

the expiration codes interfered with any contractual relationships.  <u>See</u> Tr. at 7:1-15 (Court, Crown).

Mr. Crown contended that the Complaint alleges only that, <u>if</u> the software had ceased operating, it

<u>would have</u> interfered with Horizon AG's business relationships.  <u>See id.</u> at 7:12-13 (Crown).  Mr.

---

[4] Under New Mexico law, a plaintiff must prove that the defendant breached the plaintiff's existing contracts, <u>see</u> <u>Guest v. Berardelli</u>, 145 N.M. 186, 196, 195 P.3d 353, 363 (Ct. App. 2008), whereas the Section 766A subjects a defendant to liability if he or she intentionally and improperly interferes with an existing contract by preventing performance of the contract or by causing the plaintiff's performance to be more expensive or burdensome.  At the hearing, the Court asked Mr. Brian Farlow, counsel for Horizon AG, whether New Mexico courts have adopted Section 766A. <u>See</u> Transcript of Hearing at 12:2-3 (taken May 11, 2010)(Court)("Tr.").  Mr. Farlow responded that he did not know.  <u>See</u> Tr. at 12:4-5 (Farlow).  After a careful consideration of New Mexico law, the Court concludes that New Mexico courts have not adopted Section 766A.

[5] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Farlow, Horizon AG's counsel, contended that Horizon AG could not fill certain orders, because it had to dedicate resources and time to removing the codes.  See id. at 8:16-24 (Farlow).  The Court asked Mr. Farlow about Horizon AG's business relationships, and specifically whether the business relationships were contractual.  See id. at 13:14-21 (Court).  Mr. Farlow responded that Horizon AG's relationships did not involve written contracts, but involved both the production of goods for people who placed orders and the on-going production of goods for other plants.  See id. at 13:22-14:3 (Farlow); id. at 15:8-18 (Court, Farlow).

On May 3, 2010, Horizon AG filed a motion, requesting leave to file a Second Amended Complaint.  See Unopposed Motion for Leave to File Second Amended Complaint, filed May 3, 2010 (Doc. 45).  The Court granted this motion on May 5, 2010.  See Order Granting Motion for Leave to File Second Amended Complaint, filed May 5, 2010 (Doc. 48).

## LAW REGARDING RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citation omitted).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).  A complaint challenged by a rule 12(b)(6) motion to dismiss does not need to set forth detailed factual allegations, but a plaintiff's burden to set forth the grounds

of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements").  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. at 1940.

## CHOICE OF LAW

When a Court's jurisdiction rests on diversity of citizenship under 28 U.S.C. § 1332, the Court should look to the forum state's choice-of-law rules to determine which state's substantive law to apply.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005).  In New Mexico, choice-of-law analysis is a two-step process.  See Terrazas v. Garland & Loman, Inc., 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct. App. 2006).  First, the Court must characterize the "area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue." Terrazas v. Garland & Loman, Inc., 140 N.M. at 296, 142 P.3d at 377.  The next step is to apply New Mexico's choice-of-law rule.  See Terrazas v. Garland & Loman, Inc., 140 N.M. at 296, 142 P.3d at 377.

In tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of the place where the wrong took place.  See Torres v. State, 119 N.M. 609, 613, 894 P.2d

386, 390 (1995). The place of the wrong is the location of the last act necessary to complete the injury. See Torres v. State, 119 N.M. at 619, 894 P.2d at 390. Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred. See First Nat'l Bank in Albuquerque v. Benson, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (Ct. App. 1976). The Supreme Court of New Mexico has said that it will not use the place-of-wrong-rule, however, if application of the rule would violate New Mexico public policy. See Torres v. State, 119 N.M. at 619, 894 P.2d at 390. The Court of Appeals of New Mexico has interpreted this principle to mean that, although there is a strong presumption in favor of application of the place-of-the-wrong rule, in some situations a court may depart from the general rule if another state has a more significant interest in having its law apply. See Estate of Gilmore, 124 N.M. 119, 946 P.2d 1130 (Ct. App. 1997).

**NEW MEXICO LAW REGARDING TORTIOUS INTERFERENCE
WITH CONTRACTUAL RELATIONS**

Under New Mexico law, tortious interference with an existing contractual relationship and tortious interference with a prospective contractual relationship are separate claims. See Fikes v. Furst, 134 N.M. 602, 609, 81 P.3d 545, 552 (2003); Guest v. Berardinelli, 145 N.M. 186, 196, 195 P.3d 353, 363 (Ct. App. 2008). New Mexico courts have recognized that existing contractual relationships merit more protection than prospective contractual relationships, and thus, a different analysis is appropriate for the two claims. See Fikes v. Furst, 134 N.M. at 609, 81 P.3d at 552. Neither New Mexico nor, to the Court's knowledge, any other jurisdiction recognizes a claim for attempted tortious interference.

1.   **New Mexico Law Regarding Tortious Interference With Existing Contractual Relationships.**

To properly plead a claim of tortious interference with existing contractual relationships, a

plaintiff must allege that: (i) the defendant had knowledge of existing contracts; (ii) the contracts were breached; (iii) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of the contract; (iv) damages flowed from the breached contract; and (v) the defendant induced the breach without justification or privilege. See Wolf v. Perry, 65 N.M. 457, 461-62, 339 P.2d 679, 681-82 (1959); Ettenson v. Burke, 130 N.M. 67, 73, 17 P.3d 440, 446 (Ct. App. 2001). A plaintiff seeking to hold a defendant liable for tortious interference with an existing contractual relationship must allege "that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof." Wolf v. Perry, 65 N.M. at 462, 339 P.2d at 682. Unless the defendant's allegedly tortious actions were "the proximate cause of the injury there is no liability." Wolf v. Perry, 65 N.M. at 462, 339 P.2d at 682.

A plaintiff must also allege the defendant acted with either an improper motive or improper means, and that "the improper motive or improper means [was] used in persuading the person to breach the contract." Martin v. Franklin Capital Corp., 145 N.M. 179, 182, 195 P.3d 24, 27 (Ct. App. 2008). The plaintiff does not need to allege that the improper motive was the sole motive for the interference. See Fikes v. Furst, 134 N.M. at 609, 81 P.3d at 552 ("This Court, though, has never stated that an improper motive must be the sole motive for interfering with an existing contract."). Improper means can be indicated by violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood, but this list is not definitive. See M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. 449, 454, 612 P.2d 241, 246 (Ct. App. 1980).

An ongoing business relationship, specifically a relationship in which a company fills orders for repeat purchasers who are not contractually obligated to purchase again in the future, does not,

without more, constitute a contractual relation.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., Memorandum Opinion and Order at 15-16, No. 08-1101 JB/RLP, filed September 11, 2009 (D.N.M.)(Browning, J.)(Doc. 316)("Guidance Memorandum Opinion and Order")("[T]he Court believes that the Supreme Court of New Mexico would hold that the alleged ongoing business relationship between [the Plaintiff] and its customers does not, without more, constitute an existing contractual relation.").  New Mexico's Uniform Commercial Code permits a contract for the sale of goods to be formed "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  NMSA 1978, § 55-2-204(1) (1961). Section 55-2-204(1) implies that there must be some showing of agreement.  Even though one or more terms may be left open, a contract for sale will not fail for indefiniteness if "the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." NMSA 1978, § 55-2-204(3) (1961).  It is not clear, however, that the courts could provide a remedy if a party in an ongoing business relationship attempted to enforce the "business relationship."  An ongoing business relationship therefore does not, without more, constitute an existing contractual relationship.  See Guidance Memorandum Opinion and Order at 16.

### 2. New Mexico Law Regarding Tortious Interference With Prospective Contractual Relationships.

New Mexico has adopted the tort of interference with prospective contractual relations, as stated in Restatement (Second) of Torts § 766B.  See M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 453, 612 P.2d at 245.  Section 766B states:

One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:

(a) inducing or otherwise causing a third person not to enter into or continue the

prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

M&M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 453, 612 P.2d at 245; Restatement (Second) of Torts § 766B.  In short, a plaintiff must allege that  "there was an actual prospective contractual relation which, but for the [Defendant's] interference, would have been consummated."  Anderson v. Dairyland Ins. Co., 97 N.M. 155, 159, 637 P.2d 837, 841 (1981).

A plaintiff must also allege that the defendant committed the tort with either improper motive or through improper means.  See Zarr v. Washington Tru Solutions, LLC, 146 N.M. 274, 276, 208 P.3d 919, 921 (Ct. App. 2009).  The Court of Appeals of New Mexico has held that, although a plaintiff must allege that the defendant's sole motive was to harm under the improper motive theory, such a showing is not necessary under an improper-means theory.  See Zarr v. Washington Tru Solutions, LLC, 146 N.M. at 277, 208 P.3d at 921-22.

The commentary to the Restatement (Second) of Torts § 766B describes the relationships that will support an interference with prospective contractual relations tort:

> The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff.  Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts.  Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included.  Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.  In many respects, a contract terminable at will is closely analogous to the relationship covered by this Section.
>
> The expression, prospective contractual relations, is not used in this Section in a strict, technical sense.  It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract.  It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.

-12-

Restatement (Second) of Torts § 766B cmt. c.  See also Mountain Highlands, LLC v. Hendricks, No. 08-CV-0239, 2009 WL 2486047, at *12-13 (D.N.M. July 30, 2009)(Browning, J.).

In Los Alamos National Bank v. Martinez Surveying Services, LLC, 140 N.M. 41, 139 P.3d 201 (Ct. App. 2006), overruled on other grounds by Zarr v. Washington Tru Solutions, LLC, 146 N.M. at 277, 208 P.3d at 922, the Court of Appeals of New Mexico reversed a judgment in favor of the defendant/counter-plaintiff on its claim of interference with prospective contractual relations because neither improper means nor improper motive were present.  See Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 140 N.M. at 43, 139 P.3d at 203.  The alleged prospective contractual relationship was an "ongoing, voluntary relationship" in which a company regularly bought surveys from the defendant/counter-plaintiff.  See Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 140 N.M. at 43, 139 P.3d at 203.  Neither party argued that this relationship was not a prospective contractual relationship, and the Court of Appeals did not discuss the issue. This kind of  relationship appears to be typical of the situations that have arisen in New Mexico involving prospective contractual relations.  See Zarr v. Washington Tru Solutions, LLC, 146 N.M. at 278, 208 P.3d at 923 (discussing a claim for intentional interference with an at-will employment relationship, and stating that any claim of intentional interference with an at-will employment relationship is treated as interference with a prospective employment relationship); M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. 450-51, 612 P.2d 242-43 (stating that the plaintiff brought a suit for interference with prospective contractual relations following a situation where the plaintiff was discussing selling a pump to a company when the defendant, who was visiting the plaintiff's premises, asked to speak to the buyer and offered to sell the pump to the buyer).

The Court believes that comment c and its broad definition of contractual relations applies only to prospective contractual relations and not to existing contractual relations.  The broader

definition of prospective contractual relationships is consistent with New Mexico case law that analyzes the two claims separately, because existing contractual relationships merit more protection than prospective contractual relationships.  See  Fikes v. Furst, 134 N.M. at 609, 81 P.3d at 552. This broader definition of prospective contractual relationships is consistent with New Mexico law because it is more difficult to recover under a claim of interference with prospective contractual relations than it is to recover under a claim of interference with existing contractual relations.  See Fikes v. Furst, 134 N.M. at 609, 81 P.3d at 552 ("This Court . . . has never stated that an improper motive must be the sole motive for interfering with an existing contract."); Zarr v. Washington Tru Solutions, LLC, 146 N.M. at 277, 208 P.3d at 921-22 (stating that, under the improper motive theory, a plaintiff must allege that the defendant's sole motive was to harm).  Accordingly, while New Mexico imposes a more demanding standard to establish interference with prospective contractual relations, New Mexico will require less if there is a legally enforceable contract; the broader business relationships must meet the more stringent standards.

## ANALYSIS

The Court does not believe that PSE's Motion to Dismiss is an improper attempt to obtain a dispositive ruling on the merits of the claim.  After a careful consideration of the Motion to Dismiss and the Second Amended Complaint, the Court finds that Horizon AG has failed to allege a claim of tortious interference with existing contractual relationships under New Mexico law.  The Court also finds that Horizon AG has failed to allege a claim of tortious interference with prospective contractual relationships under New Mexico law.  Horizon AG has failed to allege sufficient facts to establish a claim for tortious interference with existing contractual relationships, because it does not allege that PSE had knowledge of its existing contractual relationships, that PSE's alleged actions interfered with performance of its existing contracts, or that PSE's alleged

actions caused Horizon AG's performance of its contracts to be more expensive or burdensome. Horizon AG has failed to allege sufficient facts to support a claim for tortious interference with prospective contractual relationships, because it did not allege that it had prospective contractual relationships, or that PSE's alleged actions prevented it from acquiring or continuing the prospective relationships.

## I.     PSE'S MOTION TO DISMISS IS NOT AN IMPROPER ATTEMPT TO OBTAIN A DISPOSITIVE RULING ON THE MERITS.

Horizon AG contends that PSE's Motion to Dismiss is an attempt to have the Court issue a dispositive ruling based on PSE's version of facts, and that the motion goes beyond attacking the pleadings and effectively seeks summary judgment on these claims. See Response at 1. Horizon AG argues that, "[r]ather than evaluate the claims under the standard for dismissal under 12(b)(6), Defendant seeks to address the merits of the claims, in effect asking the Court to make a dispositive ruling on the claims." Response at 1.

There is no dispute that the facts related to these allegations have not been fully developed. If PSE were going outside the pleadings, the Court would agree that these matters should properly be reserved for later stages of litigation. The Court does not believe, however, that PSE's attempt to obtain a dispositive ruling on these claims at this juncture is improper. In its Motion to Dismiss, PSE contends that Horizon AG's allegations are not sufficient to state a claim to relief for tortious interference with contractual relations. See Motion to Dismiss at 2-4. After a careful consideration of the Second Amended Complaint, the Court finds that the allegations do not properly state a claim. Accordingly, the Court will grant PSE's Motion to Dismiss Count III of the Amended Complaint.

In its Response, Horizon AG also contends that the cases upon which PSE relied in its motion are cases where the courts dismissed tortious interference claims on summary judgment, and

-15-

therefore the Court should not consider them as authoritative support justifying a dismissal of Horizon AG's tortious-interference claims.  See Response at 1-2.  The Court agrees that none of the cases evaluated the claims under a 12(b)(6) standard, but the Court is not convinced that this fact is important.[6]  The Court cites these cases for propositions of law -- the elements required to support a claim for tortious interference -- to determine whether Horizon AG's Complaint set forth a claim of tortious interference with contractual relationships.  The procedural posture of these decisions are, therefore, largely not relevant.

## II.    THE COURT WILL APPLY NEW MEXICO LAW REGARDING TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.

PSE removed this case, invoking the Court's diversity jurisdiction, so the Court will apply New Mexico's choice-of-law rules to determine which state's substantive law applies.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005).   The Court characterizes the claim -- tortious interference with contractual relations -- as a tort, because it is self evident that a claim labeled tortious interference is a tort, and because New Mexico cases refer to the liability arising under tortious interference claims as "tort liability."  Ettenson v. Burke, 130 N.M. at 73, 17 P.3d at 446; Guest v. Berardinelli, 145 N.M. at 196, 195 P.3d at 363.  The Court will apply New Mexico law, because New Mexico is the state where the alleged harm occurred.  See Second Amended Complaint ¶¶ 9, 30-40, 66-73, at 2, 7-8, 12; First Nat'l Bank in Albuquerque v. Benson, 89 N.M. at 482, 553 P.2d at 1289 (stating that, where the elements of the underlying claim include harm, the place of

---

[6] Although Horizon AG alleges that all of the cases upon which PSE relied, which were the Guidance Memorandum Opinion and Order; Salter v. Jameson, 763 P.2d 989 (Ariz. Ct. App. 1987); and Guest v. Berardinelli, 145 N.M. 186, 195 P.3d 353 (Ct. App. 2008), dismissed tortius-interference claims on summary judgment, Salter v. Jameson addressed the tortious-interference claim on appeal from a judgment for the plaintiff.

wrong is the place where the harm occurred).

III.   **HORIZON AG'S FACTUAL ALLEGATIONS ARE NOT SUFFICIENT TO STATE A CLAIM TO RELIEF FOR TORTIOUS INTERFERENCE WITH EXISTING <u>CONTRACTUAL RELATIONSHIPS</u>.**

Horizon AG's claim of tortious interference with existing contractual relationships fails because Horizon AG does not allege sufficient facts to state a claim.  To properly state a claim for tortious interference with existing contractual relationships, a plaintiff must allege that: (i) the defendant had knowledge of existing contracts; (ii) the existing contracts were breached; (iii) the defendants played an active and substantial role in breaching the contracts; (iv) damages flowed from the breach; and (v) the defendant induced the breach without justification or privilege.  <u>See</u> <u>Guest v. Berardelli</u>, 145 N.M. at 196, 195 P.3d at 363.  Horizon AG has not set forth sufficient allegations regarding PSE's knowledge of existing contracts or PSE's interference with its existing contracts.

Horizon AG contends that the <u>Restatement (Second) of Torts</u> § 766A is implicated in this case.  Section 766A states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

<u>Restatement (Second) of Torts</u> § 766A.  Although the Court of Appeals of New Mexico has adopted the tort of interference with prospective contractual relations as stated in Section 766B, New Mexico courts have not yet adopted Section 766A.  Several New Mexico cases have, however, discussed or cited Section 766A.  <u>See</u> <u>Kelly v. St. Vincent Hosp.</u>, 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct. App. 1984)(discussing how the court's adoption of Section 766B's definition of interference with prospective contracts did not change the basis of liability for interference with existing contracts,

-17-

and stating that "Section 766A, which addresses tortious interference with existing contracts, requires a showing of improper intent or wrongful means of interference"); Diversey Corp. v. Chem-Source Corp., 125 N.M. 748, 755, 965 P.2d 332, 339 (Ct. App. 1998)(citing Restatement (Second) of Torts §§ 766, 766A, 766B as "providing a broad overview of the historical development of the tort, as well as an overview of the elements of the tort").

This Court believes that the Supreme Court of New Mexico would adopt Section 766A's broader definition of interference if it was presented with the issue.[7]  Section 766A's definition of tortious interference with existing contractual relations is similar to New Mexico's current definition of tortious interference with existing contractual relations, with one difference.[8]  Under both

---

[7] This Court has previously discussed whether New Mexico courts have adopted a claim for "intentional interference with another's performance of his *own* contract," arguably provided for in Section 766A.  See Guidance Memorandum Opinion and Order 20-21 (citations omitted).  The Court found that no New Mexico cases had adopted this variant of the tort.  The Court did not address whether the Supreme Court of New Mexico would adopt Section 766A.  The Court need not opine here whether the Supreme Court of New Mexico would adopt all of Section 766A or an interpretation of Section 766A that would address the issue in Guidance, because there is no issue in this case whether PSE's alleged interference prevented performance of its contract with Horizon AG, causing Horizon AG to be unable to perform its other contracts.

[8] Although Section 766A does not specifically state that the defendant must have knowledge of the existing contract, a defendant must know that a contract exists to be able to intentionally interfere with the performance of the contract.  See Mountain Highlands, LLC v. Hendricks, No. 08-CV-0239, 2009 WL 2486047, at * 12 (D.N.M. July 30, 2009)(Browning, J.)("[F]or the Defendants to have intentionally interfered with any . . . contractual relationship [the Plaintiff] might enjoy, they must have [been] aware of that relationship.").  Otherwise, the defendant could not desire to bring about the interference, or know "that the interference is certain or substantially certain to occur as a result of his action."  Restatement (Second) of Torts § 766A cmt. e. Both definitions of the tort require causation and damages.  See Wolf v. Perry, 65 N.M. at 461-62, 339 P.2d at 681-82 (stating that the plaintiff must prove that the defendant played an active and substantial role in breaching the contract, and that damages flowed from the breach); Restatement (Second) of Torts § 766A & cmt. h (requiring pecuniary loss and causation).  Both definitions of the tort also require either improper motive or means.  See Fikes v. Furst, 134 N.M. at 609, 81 P.3d at 552 ("Thus, for a claim based on an interference with an existing contract, the plaintiff must still prove that the defendant acted with either an improper motive or improper means, but improper motive need not be the sole motive.");  Restatement (Second) of Torts § 766A cmts. e, g (stating that the interference must be improper,

-18-

definitions, the defendant's actions must interfere with the existing contract; however, under Section 766A, a plaintiff can prove that the defendant interfered with the existing contract by either preventing performance of the contract or by causing the plaintiff's performance to be more expensive or burdensome, see Restatement (Second) of Torts § 766A, whereas under the formulaic expression of the tort that New Mexico's courts are currently using, the plaintiff's only option for proving interference is proving that the defendant's actions prevented performance of the contract, or, in other words, breached the contract, see Wolf v. Perry, 65 N.M. at 461, 339 P.2d at 681 (stating that a "plaintiff . . . must allege . . . that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act")(citations omitted). Because the Court finds that the Supreme Court of New Mexico would adopt Section 766A's broader definition of interference, it will analyze whether Horizon AG has sufficiently pled that PSE's actions caused Horizon AG's performance of its existing contracts to be more burdensome and expensive, in addition to analyzing whether Horizon AG has sufficiently pled that PSE had knowledge of an existing contract and that PSE's actions prevented performance of the existing contracts.  Horizon AG's factual allegations are not sufficient to set forth any of these elements. Accordingly, the Court finds that Horizon AG has not stated a claim for tortious interference with an existing contractual relationship.

**A.     HORIZON AG HAS NOT ALLEGED SUFFICIENT FACTS REGARDING KNOWLEDGE OF EXISTING CONTRACTS.**

Horizon AG's factual allegations regarding PSE's knowledge of its existing contractual relations lack sufficient detail and are conclusory.  To properly plead a claim of tortious interference

---

meaning that the defendant must have either an improper motive to harm the plaintiff or use improper means to interfere with the contract).

with existing contractual relations, Horizon AG must allege that PSE had knowledge of its existing contracts.  See Guest v. Berardelli, 145 N.M. at 196, 195 P.3d at 363.  PSE contends that Horizon AG has not alleged sufficient facts to set forth the existence of contractual relations.  See Motion to Dismiss at 2-3.  Horizon AG contends that its Complaint "properly states a claim," and that it is entitled to pursue its claims of tortious interference.  See Response at 6.  Horizon AG does not, however, point the Court to any paragraphs in its Second Amended Complaint that make the necessary allegations.  After careful consideration of the Second Amended Complaint, the Court finds that Horizon AG has not alleged sufficient facts to set forth that PSE had knowledge of its existing contracts.  Horizon AG alleges: "At all times relevant PSE was aware or should have been aware that Horizon [AG] was engaged in a substantial number of business relationships."  Second Amended Complaint ¶ 67, at 12.  This allegation is not sufficient, because it is a conclusory statement reciting an element of the cause of action.  See Ashcroft v. Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").  Horizon AG has not alleged facts regarding the basis of PSE's knowledge; for example, Horizon AG does not allege that it informed PSE of its existing contracts.  Horizon AG also does not specify any particular contract that it had with a particular customer.  Instead, Horizon AG states that it was engaged in a number of business relationships.  This Court has previously found that an ongoing business relationship does not, without more, constitute an existing contractual relationship. See Guidance Memorandum Opinion and Order at 16.  Because an ongoing business relationship, without more, does not constitute an existing contractual relationship, and because Horizon AG's allegation is a conclusory statement reciting an element of the cause of action, the Court finds that Horizon AG has not alleged sufficient facts to set forth this element.  Horizon AG therefore has not stated a claim for tortious interference of existing contractual

-20-

relations.

**B.**     **HORIZON AG HAS NOT ALLEGED SUFFICIENT FACTS REGARDING INTERFERENCE WITH THE PERFORMANCE OF HORIZON'S EXISTING CONTRACTS.**

Horizon AG has not alleged sufficient facts to set forth that PSE's actions interfered with its existing contracts. To properly plead a claim for interference with existing contractual relationships, a plaintiff must allege that the defendant's tortious behavior interfered with its existing contracts. See Wolf v. Perry, 65 N.M. at 462, 339 P.2d at 682 (stating that a plaintiff seeking to hold a defendant liable for tortious interference with an existing contractual relationship must allege "that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act").

PSE contends that Horizon AG has not alleged that PSE interfered with its existing contractual relations. See Motion to Dismiss at 3. Horizon AG contends, in its Response, that it has alleged that "some orders went unfilled because Horizon [AG] had to dedicate plant time and effort to identifying, defeating and ultimately removing time bombs." Response at 5. Horizon AG does not cite to its Second Amended Complaint in its Response, and after a careful review of the Complaint, the Court cannot find this allegation. The Second Amended Complaint states only "[t]he shut down would have prevented [Horizon AG] from meeting all current . . . orders from its customers." Second Amended Complaint ¶ 69, at 12 (emphasis added). This allegation does not allege that an existing contractual or business relationship was breached or terminated; rather, it is an allegation that breach or termination would have occurred had the software shut down the plant. Therefore, accepting the allegations in the Second Amended Complaint as true, Horizon AG's claim for tortious interference with existing contractual relationships fails because it has not alleged that PSE interfered with its existing business relations.

-21-

**C.    HORIZON AG HAS NOT ALLEGED SUFFICIENT FACTS REGARDING INTERFERENCE THAT CAUSED HORIZON'S PERFORMANCE OF THE CONTRACT TO BE MORE EXPENSIVE OR BURDENSOME.**

Horizon AG also has not alleged sufficient facts to set forth that PSE's actions caused Horizon AG's performance of the contact to be more expensive or burdensome.  Horizon AG contends that it "took costly steps to save [its] contractual relationships [and] minimize the harm caused by PSE [sic] conduct."  Response at 6.  Although Horizon AG contends that performance of its existing contracts was more expensive and burdensome because of PSE's actions, it does not cite to any paragraphs in its Second Amended Complaint that make this allegation.  Upon a careful review of the Second Amended Complaint, the Court cannot find these allegations.  In the Second Amended Complaint, Horizon AG alleges that it has "expended considerable sums identifying and removing PSE time bombs in order to prevent the shut down of its plant."  Second Amended Complaint ¶ 41, at 9.  This paragraph does not allege that PSE's actions caused Horizon AG's performance of its existing contracts to be more expensive.  It states only that PSE's actions caused Horizon AG to spend considerable sums removing the codes so that performance of its contracts would not be interrupted.  Therefore, accepting the allegations in the Second Amended Complaint as true, Horizon AG has not stated a claim for tortious interference with existing contractual relationships.

**IV.    HORIZON AG'S FACTUAL ALLEGATIONS ARE NOT SUFFICIENT TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS.**

As to its claim for tortious interference with prospective contractual relations, Horizon AG must allege that PSE's conduct interfered with the consummation of at least one of Horizon AG's prospective contractual relations, and either improper motive or improper means.  See M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 453, 612 P.2d at 245.  PSE contends that Horizon

AG has not alleged any facts that set forth PSE's interference with prospective contractual relations, see Motion to Dismiss at 3, and Horizon AG responds that PSE intended to affect its future business relations and prevent it "from acquiring or continuing a prospective business relation," see Response at 5.   Horizon AG does not allege sufficient facts regarding either a prospective contractual relationship or interference with that prospective relationship.   See Anderson v. Dairyland Ins. Co., 97 N.M. at 159, 637 P.2d at 841 (stating a plaintiff must allege "that there was an actual prospective contractual relation, which but for the [defendant's] interference, would have been consummated").   Horizon AG alleges that: "PSE was aware . . . that Horizon [AG] would be engaged in additional business relationships."  Second Amended Complaint ¶ 68, at 12.  Horizon AG's statement that PSE had knowledge of its prospective contractual relations is a conclusory allegation and is not an allegation of fact.   Horizon AG has not alleged any facts that set forth how PSE knew of its prospective contractual relations.   Although a continuing or customary relationship is one of the relations protected under the tort of interference with prospective contractual relations, see Los Alamos Nat'l Bank v. Martinez Surveying Servs., 130 NM at 43, 139 P.3d at 230, Horizon AG has not alleged that it had any continuing or customary relationships with its customers.   Instead, Horizon AG set forth a threadbare and conclusory recital of one of the elements of tortious interference with prospective contractual relations.   The facts that Horizon AG alleged thus do not sufficiently state that it had prospective business relations.   See Ashcroft v. Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Horizon AG does not allege that PSE interfered with a prospective contractual relationship. Horizon AG alleges: "The shut down would have prevented it from meeting all . . . future orders from its customers."  Second Amended Complaint ¶ 69, at 12 (emphasis added).  Although Horizon

AG alleges that PSE's conduct <u>would have</u> interfered with prospective orders, <u>if</u> the plant had shut down, it does not allege that PSE's actions did interfere with prospective orders.  Taking Horizon AG's allegations as true, there was not a prospective contractual relationship, which but for PSE's interference, would have been consummated.  Horizon AG's claim for tortious interference with prospective contractual relations thus fails.  Horizon AG is not entitled to pursue its tortious interference with prospective-contractual-relations claim based on its current allegations.

The Second Amended Complaint does not properly plead a cause of action for tortious interference with either existing or prospective contractual relations, and thus fails to establish a plausible entitlement to relief, as <u>Bell Atlantic Corp. v. Twombly</u> and its progeny require.  <u>See Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir.2008).  Accordingly, the Court will grant PSE's motion to dismiss, as Horizon AG has not properly pled its allegations.  Because Horizon AG may be able to cure these deficiencies in its pleadings, the Court will dismiss Count III without prejudice to Horizon AG moving to amend that count, attaching a pleading that addresses the deficiencies the Court has found in Count III.

**IT IS ORDERED** that the Defendant Precision Systems Engineering's Motion to Dismiss Count III of First Amended Complaint, filed February 15, 2010 (Doc. 31), is granted, and Count III is dismissed without prejudice to Plaintiff Horizon AG-Products moving to amend to correct the deficiencies the Court has found.

_____

UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher P. Bauman
Brian G. Grayson
Bauman, Dow & Leon, P.C.
Albuquerque, New Mexico

-- and --

David W. Elrod
Brian A. Farlow
Elrod, PLLC
Dallas, Texas

      *Attorneys for the Plaintiff*

Roger E. Michener
Peacock Myers PC
Albuquerque, New Mexico

-- and --

Ross L. Crown
Lewis and Roca, LLP
Albuquerque, New Mexico

      *Attorneys for Defendant Precision Systems Engineering, Inc.*